JUDGE BAER  13 CIV 7360

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUMAN RIGHTS WATCH,

                Plaintiff,

v.

DEPARTMENT OF JUSTICE FEDERAL BUREAU OF PRISONS,

                Defendant.

Case No. _____


RECEIVED OCT 18 2013 U.S.D.C. S.D.N.Y. CASHIERS

**COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff, Human Rights Watch, by its undersigned counsel, alleges:

**INTRODUCTION**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, brought by Human Rights Watch ("Plaintiff") to compel access to important information about possible human rights abuses in federal terrorism prosecutions of American Muslims since the September 11, 2001 attacks. Obtaining this information is a matter of urgent concern to Human Rights Watch, one of the world's leading organizations dedicated to defending and protecting human rights. Human Rights Watch conducts rigorous, objective investigations and timely analyses of key human rights issues around the world. Human Rights Watch plans to publish a report using the information it gathers through the FOIA requests it seeks to enforce in this action.

2. Plaintiff's FOIA requests seek data about the numbers of individuals charged with or convicted of terrorism or terrorism-related offenses, and the conditions to which

they have been subjected while in detention — matters of great public importance, and a significant focus of the report Plaintiff aims to publish.

3. Plaintiff, together with the Human Rights Institute of Columbia Law School' ("HRI") submitted ten FOIA requests ("requests") to the Federal Bureau of Prisons ("BOP") and five to the National Security Division ("NSD") of the Department of Justice in August 2012, well in advance of Plaintiff's then target date of January 2013 for publishing its report. Plaintiff requested BOP and NSD to expedite processing of the requests in order to permit Plaintiff to inform the public in a timely manner — Plaintiff originally intended to publish its report in January 2013 — and to allow the public to engage with public officials at key policy junctures. More than a year later, none of the data requested has been disclosed.

4. NSD forwarded the FOIA requests it received to BOP, which consolidated all of Plaintiff's requests for response. Plaintiff has made persistent efforts to facilitate prompt disclosure through negotiations with BOP, including frequent communications with the BOP officer charged with processing the requests. In December 2012, BOP agreed to prioritize certain information sought by Plaintiff and expedite its search process, while preserving the original scope of the requests, but these promises accomplished nothing. After months of missed deadlines, Plaintiff and HRI filed an administrative appeal of BOP's constructive denial of their requests in June 2013, but this too has been ignored. Plaintiff and HRI received no substantive response to their appeal.

5. More than twelve months have now passed since Plaintiff filed its requests. BOP has yet to disclose a single piece of data in response. Indeed, it has not provided any substantive response at all, failing to provide any justification for its failure to disclose,

failing to respond to Plaintiff's request for expedited processing, and failing to respond to Plaintiff's administrative appeal — all in clear violation of FOIA.

6. Given the significant public interest in understanding the federal government's terrorism prosecution policies and practices, Plaintiff brings this action for injunctive and other appropriate relief in order to obtain speedy enforcement of its statutory right to obtain prompt disclosure of the data they seek. Plaintiff seeks expeditious treatment of this Complaint pursuant to 28 U.S.C. § 1657.

## THE PARTIES

7. Plaintiff Human Rights Watch ("HRW") employs more than 350 professionals, among them lawyers, journalists, and academics. These professionals work to uncover and report on human rights issues around the world. In order to reach the broadest possible audience, the organization publishes detailed reports on human rights issues of interest to a wide range of people. These reports are made available in print and on Plaintiff's website. Human Rights Watch also uses its extensive contacts in the media to draw greater attention to the issues, and its employees often comment on issues in the media. In the twelve months prior to September 2013 there were an average of 99 citations per day to Human Rights Watch in print publications around the world (not including online or broadcast media coverage). Plaintiff's headquarters are located at 350 Fifth Avenue, New York, New York.

8. Defendant U.S. Department of Justice Federal Bureau of Prisons is a department within the executive branch of the U.S. government. Defendant is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action and personal jurisdiction over the defendant pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-06.

10. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) because Plaintiff's principal place of business is within the district.

**FACTS**

**Background**

11. Plaintiff Human Rights Watch is investigating and reporting upon significant human rights abuses in federal terrorism prosecutions of American Muslims in the years following the attacks of September 11, 2001. Plaintiff is currently preparing a report to inform the public about the nature and scope of these abuses, which it now aims to publish in late November 2013.

12. Specifically, Plaintiff's in-depth investigation into more than thirty specific cases has led it to believe that the government has relied on discriminatory bases for investigating American Muslims; that the government's prosecution of many American Muslims on terrorism or terrorism-related charges raises significant due process concerns; and that there are serious problems with the conditions imposed upon American Muslims in federal detention facilities, including the abuse of solitary confinement and otherwise inhumane conditions. These practices have had a significant negative impact on American communities.

13. In order to determine the representativeness of its sample and understand the full scope of the concerns it has uncovered, Plaintiff's FOIA requests seek data about the larger contours of federal terrorism prosecutions, including data about the overall population of

4

individuals subject to such prosecutions and the detention conditions imposed on those individuals.

14. The information Plaintiff seeks through its FOIA requests is not publicly available. Indeed, there is very little publicly available information at all about federal terrorism prosecutions and the data that is available is often unreliable.[1]

15. The issues addressed in Plaintiff's forthcoming report are of grave consequence. Plaintiff brings this action in order to obtain disclosure of information that is crucial to the public's understanding of significant human rights concerns in this country, and that is necessary to permit informed public advocacy on these issues.

**Plaintiff's FOIA Requests**

16. On August 24, 2012, Plaintiff Human Rights Watch and its co-requestor HRI submitted ten FOIA requests by letter to BOP and five FOIA requests by letter to NSD. (True and correct copies of these requests are annexed as Exhibits B-P.) The requests sought data regarding individuals either charged with or convicted of "terrorism" or "terrorism-related" offenses. In addition to requesting data about the total number of individuals charged with or convicted of such offenses, Plaintiff's FOIA requests sought information about four main aspects of these individuals' detention in federal custody. In particular:

- Pre-conviction detention facility placement (i.e., general population, protective custody, administrative segregation, special housing units, etc.). *See* Exs. H, I & O.

---

[1] *See, e.g.*, Ellen Nakashima, *Audit: Justice Department Office Overstated Terrorism Conviction Statistics*, WASH. POST, Sept. 17, 2013, http://www.washingtonpost.com/world/national-security/audit-justice-dept-office-overstated-terrorism-conviction--statistics/2013/09/17/08444122-1ef2-11e3-8459-657e0c72fec8_story.html (explaining that "[s]hoddy recordkeeping led to significant overstating of terrorism convictions and other inaccuracies by a Justice Department branch that coordinates U.S. attorneys' offices across the country, according to a federal audit"). A true and correct copy of this article is annexed as Exhibit A.

- Post-conviction detention facility placement. *See* Exs. J, K & P.
- Detention in Communication Management Units. *See* Exs. B, C & L.
- Detention under Special Administrative Measures (SAMs), including
  - SAMs pursuant to 28 C.F.R. § 501.2, *see* Exs. D, E & M; and
  - SAMs pursuant to 28 C.F.R. § 501.3, *see* Exs. F, G & N.

17. In its requests, Plaintiff stressed the "urgency to inform the public" and explained that the information was sought for publication in a report on federal terrorism prosecutions they planned to publish in January 2013. Plaintiff stressed the importance of reporting on this matter quickly so that the public could "engage with representatives of the newly elected government, in a position to make policy decisions regarding matters to be addressed in the report." Plaintiff requested that BOP and NSD expedite their treatment of each of the FOIA requests pursuant to 28 C.F.R. § 16.5(d)(4). *See, e.g.*, Ex. B at 7.

18. Between September 14 and October 26, the NSD sent Plaintiff five letters informing it that NSD had referred all five FOIA requests it received to BOP, noting in each letter that "this type of request is not handled in this office." (True and correct copies of each of these letters are annexed as Exhibit Q.)

19. BOP never provided any official, written response to Plaintiff's requests. In the interests of expediting the administrative process, Plaintiff, through its counsel, reached out to BOP by phone to discover the status of their requests.

20. On November 14, 2012, Plaintiff, through its counsel, located and contacted by phone the BOP FOIA officer handling its requests. The officer informed Plaintiff's counsel that its ten requests had been consolidated under one request number, 2012-11904. The

officer further acknowledged that no letter had been sent to Plaintiff acknowledging that BOP received its requests.

21. On December 6, 2012, Plaintiff, hearing nothing from BOP since November 14, 2012, again reached out to the BOP FOIA officer handling its requests through its counsel. The officer informed Plaintiff's counsel that the BOP was concerned about the scope of Plaintiff's requests and that he, the officer, would like to talk with Plaintiff and HRI about the specific information they sought. The officer believed a conversation with Plaintiff could help speed up the process.

22. On December 13, 2012, co-requestor HRI and Plaintiff, through its counsel, conferred with the BOP FOIA via telephone to discuss Plaintiff's requests. Plaintiff explained the substance of the requests to the BOP FOIA officer. Plaintiff and HRI then negotiated a tiered-search process with BOP, whereby BOP would prioritize its search and production of certain information and, after completing its search for this first-tier information, proceed to search for the remaining information sought in their requests.

23. On December 20, 2012, Plaintiff and co-requestor HRI memorialized their tiered-search agreement with BOP in an email and an attached letter to the BOP FOIA officer. In that email and letter, Plaintiff and HRI offered some explanation of their requests; laid out the information they sought to include in the first-tier of BOP's search; and reiterated that they were neither foregoing a full response to their initial requests nor narrowing those requests, but instead were merely initiating a tiered-search and prioritizing certain information in order to facilitate an expedited response. Plaintiff and HRI asked the BOP FOIA officer to call or email if he had any questions. (A true and correct copy of this email and letter is annexed as Exhibit R.)

24. BOP never responded to the December 20, 2012 letter.

25. On March 12, 2013, Plaintiff, through its counsel, reached out to the BOP FOIA officer via telephone to inquire about the status of BOP's search. The BOP officer informed Plaintiff that while he could not make any promises, BOP should be able to respond to Plaintiff's requests within a month's time. No such response ever arrived.

26. By email, dated May 21, 2013 and letter dated May 22, 2013, Plaintiff, through its counsel, informed BOP that it could no longer wait for BOP to respond to their requests. Plaintiff asked that BOP provide the first tier of documents responsive to its FOIA requests within one week of that letter. BOP did not respond. (True and correct copies of Plaintiff's May 21, 2013 email and May 22, 2013 letter are annexed as Exhibit S.)

27. Between August 24, 2012 and June 6, 2013, BOP produced no records to Plaintiff nor claimed any FOIA exemptions for withholding the requested records. Given this non-response, on June 7, 2013 Plaintiff's counsel submitted to BOP an appeal of the constructive denial of the requests on behalf of Plaintiff and HRI. Plaintiff expressly sought expedited treatment of the appeal, explaining the time-sensitive nature of its requests and the important public interest in the documents it continued to seek. (A true and correct copy of Plaintiff's administrative appeal is annexed as Exhibit T.)

28. By email on June 17, 2013, the BOP FOIA officer indicated that he would contact Plaintiff's counsel. (A true and correct copy of the BOP FOIA officer's email is annexed as Exhibit U.)

29. By email on June 25, 2013, Plaintiff's counsel, hearing nothing from BOP, replied to BOP's email and attempted to arrange a telephone call with the BOP FOIA officer. (A true and correct copy of Plaintiff's June 25, 2013 email is annexed as Exhibit V.)

30. By email on July 15, 2013, the BOP FOIA officer responded and suggested a number of times that he would be available to speak. (A true and correct copy of the BOP FOIA officer's July 15, 2013 email is annexed as Exhibit W.)

31. By phone on July 17, 2013, Plaintiff's counsel and the BOP FOIA officer discussed the administrative appeal and the status of the FOIA requests. The BOP FOIA officer requested additional time to process the request and to deliver the requested records but was unwilling to commit to any specific deadlines. Plaintiff's counsel reminded the BOP FOIA officer that nearly six months had passed since the BOP had agreed to voluntarily release the requested records. No agreement was reached.

32. More than twenty days have passed since Plaintiff and HRI submitted their June 7, 2013 administrative appeal to BOP. Plaintiff has received no further response to its appeal. Plaintiff has therefore constructively exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

**FIRST CAUSE OF ACTION**
(Violation of FOIA for failing to expedite Human Rights Watch's requests)

33. Plaintiff Human Rights Watch repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

34. Defendant's failure to expedite the processing of Plaintiff's requests and Plaintiff's appeal violates FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendant's own regulations promulgated thereunder.

**SECOND CAUSE OF ACTION**
(Violation of FOIA for failure to make records available)

35. Plaintiff repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

36. Defendant's failure to make promptly available and to release the records requested by Plaintiff violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendant's own regulations promulgated thereunder.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a. Expedite consideration of this Complaint pursuant to 28 U.S.C. § 1657;

b. Declare that the records sought by Plaintiff in its FOIA requests are public under 5 U.S.C. § 552 and must be disclosed;

c. Order Defendant immediately to provide to Plaintiff full and unredacted copies of those records;

d. Award Plaintiff the costs of this proceeding, including reasonable attorneys' fees as expressly permitted by FOIA; and

e. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

MEDIA FREEDOM AND INFORMATION ACCESS CLINIC, YALE LAW SCHOOL

By: /s/ David A. Schulz
David A. Schulz (DS-3180)
Co-Director
Media Freedom and Information Access Clinic
Yale Law School
321 West 44th Street, Suite 1000
New York, NY 10036
Tel: (212) 850-6100
Fax: (212) 850-6299
DSchulz@lskslaw.com

Jonathan M. Manes (JM-3238)
Media Freedom and Information Access Clinic
Yale Law School
P.O. Box 208215
New Haven, CT 06520
Tel: (203) 432-9387

Fax: (203) 432-3034
Jonathan.Manes@yale.edu

Dated: October 18, 2013
New York, NY