**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HUMAN RIGHTS WATCH,

      Plaintiff,

           v.

DEPARTMENT OF JUSTICE FEDERAL BUREAU
OF PRISONS,

      Defendant.

No. 13 Civ. 7360 (JPO)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**


PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2725

ELIZABETH TULIS
Assistant United States Attorney
— Of Counsel —

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND...................................................................................................1

    A.    The FOIA Requests.................................................................................................1

    B.    The FOIA Complaint .............................................................................................2

    C.    BOP's Releases in November 2013 and January-March 2014...............................3

    D.    Referrals to CRM and OIP....................................................................................3

    E.    Releases by CRM and OIP ....................................................................................3

    F.    The Parties' Stipulation.........................................................................................4

    G.    Further Searches and Releases by BOP .................................................................4

ARGUMENT ...........................................................................................................................6

    A.    Legal Standards for Summary Judgment in FOIA Actions ...................................6

    B.    The Government Properly Applied FOIA's Exemptions .......................................8

        1.    BOP, CRM, and OIP Properly Withheld Third Parties' Personally Identifiable Information Pursuant to Exemptions 6 and 7(C) ...................8

        2.    BOP Properly Withheld Information Relating to Law Enforcement Techniques and Procedures Pursuant to Exemption 7(E).........................14

        3.    BOP Properly Withheld Information in the "Key Indicators" Documents Pursuant to Exemptions 3, 7(E), and 7(F) .............................15

        4.    The Government Has Produced All Reasonably Segregable, Non-Exempt Responsive Information………………………………...16

        5.    HRW Is Not Entitled to the Release of Non-Responsive Information ...........................................................................................17

CONCLUSION........................................................................................................................18

# TABLE OF AUTHORITIES

**CASE**                                                                                          **PAGE**

*Allard K. Lowenstein International Human Rights Project v. DHS*,
    626 F.3d 678 (2d Cir. 2010)......................................................................................15

*Amuso v. DOJ*,
    600 F. Supp. 2d 78 (D.D.C. 2009) ..........................................................................9

*Associated Press v. DOD*,
    554 F.3d 274 (2d Cir. 2009)..............................................................................10, 12

*Associated Press v. DOJ*,
    549 F.3d 62 (2d Cir. 2008)......................................................................................10

*Associated Press v. DOJ*,
    No. 06 Civ. 1758 (LAP), 2007 WL 737476 (S.D.N.Y. Mar. 7, 2007) ...............9

*CIA v. Sims*,
    471 U.S. 159 (1985)...................................................................................................6

*Carney v. DOJ*,
    19 F.3d 807 (2d Cir. 1994)........................................................................................7

*Cook v. National Archives & Records Admin.*,
    758 F.3d 168 (2d Cir. 2014)......................................................................................9

*Ctr. for National Sec. Studies v. DOJ*,
    331 F.3d 918 (D.C. Cir. 2003)..................................................................................9

*DOD v. FLRA*,
    510 U.S. 487 (1994)............................................................................................10, 13

*DOJ v. Reporters Committee for Freedom of Press*,
    489 U.S. 749 (1989).................................................................................................10

*Department of Air Force v. Rose*,
    425 U.S. 352 (1976).................................................................................................12

*Department of the Interior v. Klamath Water Users Protective Association*,
    532 U.S. 1 (2001)......................................................................................................6

*Families for Freedom v. U.S. Customs & Border Protection*,
    837 F. Supp. 2d 287 (S.D.N.Y. 2011).....................................................................17

*Ferguson v. FBI,*
No. 89 Civ. 5071 (RPP), 1995 WL 329307 (S.D.N.Y. June 1, 1995) ................................7

*Freedom Watch, Inc. v. National Sec. Agency,*
--- F. Supp. 2d ---, 2014 WL 2768849 (D.D.C. June 12, 2014) ................................17

*Hopkins v. HUD,*
929 F.2d 81 (2d Cir. 1991) ................................................10

*John Doe Agency v. John Doe Corp.,*
493 U.S. 146 (1989) ..........................................................6, 7

*Judicial Watch, Inc. v. FDA,*
449 F.3d 141 (D.C. Cir. 2006) ........................................12

*Landmark Legal Foundation v. EPA,*
272 F. Supp. 2d 59 (D.D.C. 2003) ...................................2

*Life Extension Foundation, Inc. v. I.R.S.,*
915 F. Supp. 2d 174 (D.D.C. 2013) ...............................15

*Martin v. DOJ,*
488 F.3d 446 (D.C. Cir. 2007) .........................................6

*Muslim Advocates v. U.S. Department of Justice,*
833 F. Supp. 2d 106 (D.D.C. 2012) ...............................15

*National Archives & Records Admin. v. Favish,*
541 U.S. 157 (2004) .........................................................13

*National Sec. Archive Fund, Inc. v. CIA,*
402 F. Supp. 2d 211 (D.D.C. 2005) ...............................16

*New York Times Co. v. DOJ,*
872 F. Supp. 2d 309 (S.D.N.Y. 2012) ..........................6, 7

*Smith v. Bureau of Alcohol, Tobacco & Firearms,*
977 F. Supp. 496 (D.D.C. 1997) ................................14,15

*United States Department of State v. Washington Post Co.,*
456 U.S. 595 (1982) .........................................................8, 9

*Wilner v. National Sec. Agency,*
592 F.3d 60 (2d Cir. 2009) ...............................................7

*Wilson v. U.S. Department of Transportation*,
    730 F. Supp. 2d 140 (D.D.C. 2010) ...................................................................17

*Wood v. FBI*,
    432 F.3d 78 (2d Cir. 2005).........................................................................9, 10

*Yagman v. U.S. Department of Justice*,
    No. CV 13-0354 PA (Ex), 2014 WL 1245305 (C.D. Cal. Mar. 22, 2014) .........................13

## STATUTES

5 U.S.C. § 552 ...................................................................................................1, 6

5 U.S.C. § 552(b) ...................................................................................................16

5 U.S.C. § 552(a)(3)(C) ...........................................................................................7

5 U.S.C. § 552(a)(4)(B) ...........................................................................................7

5 U.S.C. § 552(b)(3) ...............................................................................................16

5 U.S.C. § 552(b)(6) .................................................................................................8

5 U.S.C. § 552(b)(7)(C) ...........................................................................................9

5 U.S.C. § 552(b)(7)(E) ..........................................................................................14

5 U.S.C. § 552(b)(7)(F) ..........................................................................................16

## RULES AND REGULATIONS

28 C.F.R. § 513.34(b) .............................................................................................13

Fed. R. Civ. P. 56(a) .................................................................................................7

## PRELIMINARY STATEMENT

Defendant Federal Bureau of Prisons ("BOP" or "Defendant"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment in the above-captioned case, which arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

This action arises from FOIA requests submitted to BOP by Plaintiff Human Rights Watch ("HRW"). HRW's FOIA requests related to, broadly, inmates convicted of or charged with "terrorism" or "terrorism-related" offenses, inmates confined in Communications Management Units, and inmates subject to Special Administrative Measures. Certain responsive records located by BOP were referred to other Department of Justice components, specifically the Criminal Division ("CRM") and the Office of Information Policy ("OIP").

Pursuant to a stipulation entered into by the parties on April 24, 2014, HRW has agreed not to challenge the adequacy of BOP's searches for records, as described below. Thus, the only matter to be decided by the Court at this juncture is whether BOP, CRM, and OIP (collectively, the "Government") properly withheld documents or portions of documents under FOIA. As set forth in detail herein, and in the agency declarations in support of this motion, the Government properly withheld documents or portions of documents pursuant to FOIA's exemptions, specifically, Exemptions 3, 6, 7(C), 7(E), and 7(F). Accordingly, the Court should grant Defendant's motion for summary judgment in its entirety.

## FACTUAL BACKGROUND

### A.     The FOIA Requests

On or about August 24, 2012, HRW submitted FOIA requests (the "FOIA Requests") to BOP and the U.S. Department of Justice's National Security Division ("NSD"). The FOIA

Requests, which totaled approximately 91 pages, included ten requests originally submitted to BOP, and five requests that were originally submitted to NSD and referred to BOP in or around October 2012. *See* Public Declaration of Clinton Stroble ("Stroble Decl.") ¶ 4. HRW's voluminous requests sought, broadly, information regarding individuals charged with or convicted of "terrorism" or "terrorism-related" offenses, information relating to inmates confined in Communications Management Units ("CMUs"), and information regarding inmates subject to Special Administrative Measures ("SAMs"). *See* Compl., Exs. B-P, ECF Nos. 1-2 through 1-16.

In December 2012, HRW, through counsel, sent BOP a letter (the "December 2012 Letter") that set forth a series of requests that HRW asked BOP to prioritize as a "first tier" search. *See* Stroble Decl. ¶ 5; Compl., Ex. R, ECF No. 1-18, at 3. These requests were actually questions, rather than requests for documents that reasonably described the records sought. *See* Stroble Decl. ¶ 5; *see, e.g.*, Compl., Ex. R, ECF No. 1-18, at 3 ("[1.a.] How many individuals indicted on terrorism and terrorism-related charges are currently in pre-conviction detention in BOP facilities?"). Similarly, the original FOIA Requests did not reasonably describe the requested records, but rather sought records or database(s) "sufficient to identify" various statistics and other information. *See* Compl., Exs. B-P, ECF Nos. 1-2 through 1-16; Stroble Decl. ¶ 5. Though not required to do so under FOIA, *see, e.g.*, *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) ("an agency is not required to 'answer questions disguised as a FOIA request'"), BOP nonetheless undertook a search for documents responsive to HRW's queries. *See* Stroble Decl. ¶ 5.

## B. The FOIA Complaint

On October 18, 2013, HRW, through counsel, filed a complaint alleging, *inter alia*, that BOP had provided no substantive response to its requests. *See* Compl. ¶ 5.

### C. BOP's Releases in November 2013 and January-March 2014

In November 2013, BOP produced 88 pages responsive to the FOIA Requests, as re-framed by the December 2012 Letter. *See* Stroble Decl. ¶ 5; Declaration of Elizabeth Tulis ("Tulis Decl.") ¶ 2 n.1. In January 2014, BOP, through counsel, produced 149 additional pages of records responsive to the FOIA Requests. *See* Stroble Decl. ¶ 6; Tulis Decl. ¶ 2. In March 2014, BOP, through counsel, re-produced these 149 pages of records with additional redactions, due to an inadvertent disclosure of certain exempt information in the original release. *See* Stroble Decl. ¶ 6; Tulis Decl. ¶ 2

### D. Referrals to CRM and OIP

By letter dated November 21, 2013, BOP referred some records located in its initial search to CRM. *See* Declaration of Gail A. Brodfuehrer ("CRM Decl.") ¶ 7. The records consisted of origination and renewal memoranda regarding SAMs. *See id.* Upon CRM's review of the records referred by BOP, it was determined that seven of the SAMs memoranda originated with the Office of the Attorney General. *See id.* ¶ 9. Accordingly, those records were referred to OIP, the office responsible for handling requests for records of the Office of the Attorney General. *See id.*; *see also* Declaration of Vanessa R. Brinkmann ("OIP Decl.") ¶¶ 3-4.

### E. Releases by CRM and OIP

In March 2014, CRM, through counsel, released 377 pages of records to HRW. *See* CRM Decl. ¶ 10; Tulis Decl. ¶ 3. CRM subsequently re-released this set of records with some of the redactions applied earlier at the behest of the Federal Bureau of Investigation now removed. *See* CRM Decl. ¶ 10; Tulis Decl. ¶ 3. CRM determined that 372 of those pages were appropriate for release with excisions and five pages were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(6), and (b)(7)(C). *See* CRM Decl. ¶ 10. In the second production, page CRM 748 was

used as a placeholder for the five pages withheld in full. *See id.* In April 2014, OIP, through

counsel, released 116 pages of records to HRW. *See* OIP Decl. ¶ 6; Tulis Decl. ¶ 4.

### F.    The Parties' Stipulation

On April 24, 2014, the parties entered into a stipulation (the "April 24 Stipulation") that

resolved the scope of additional searches BOP would conduct for records responsive to the FOIA

Requests. *See* ECF No. 18-1. The April 24 Stipulation also provided, *inter alia*, that HRW would

not challenge redactions or withholdings made by BOP, CRM, and OIP pursuant to FOIA

Exemptions 6 and 7(C), to the extent that the information redacted or withheld consisted of

name; date of birth; register number; citizenship; country of birth; religion; case information

limited to parties, case number, or witnesses; friends/associates; family members; and dates of

visits to inmates. *See id.* ¶ 2. The April 24 Stipulation also provided that it did not constitute an

admission that any of the searches or other actions by BOP described therein were required by

FOIA, and that it did not create any precedent for how BOP would process, assert any

exemptions with respect to, or release records in response to future FOIA requests filed by HRW

or any other requester. *See id.* ¶ 12. The April 24 Stipulation was so-ordered by the Court on

May 9, 2014. ECF No. 19.

### G.    Further Searches and Releases by BOP

Following entry of the April 24 Stipulation by the Court, BOP undertook the following

actions pursuant to the Stipulation:

First, BOP produced, through counsel, certain records from its SENTRY[1] records system

for inmates designated in SENTRY as having a Security Threat Group ("STG") designation of

"international terrorist" since September 11, 2001, specifically: (a) unit history; (b) quarters

---

[1] SENTRY is BOP's national intranet on-line information system; essentially, it tracks
inmates. *See* Stroble Decl. ¶ 10(A) n.1.

history; and (c) admit-release history limited to facility, assignment, start date/time, and stop date/time. *See* Stroble Decl. ¶ 10(A). The identifying information of such inmates was not released; however, each inmate having an STG designation of "international terrorist" was assigned a unique identifier number and the unit history, quarters history, and admit-release history for a particular inmate were labeled with this unique identifier number. *See id.*

Second, BOP produced, through counsel, two spreadsheets with the following information from BOP's SENTRY system for inmates who, since September 11, 2001, have had an STG designation of "international terrorist" and have had Special Administrative Measures (SAMs) imposed under 28 C.F.R. § 501.2 or 501.3, with one spreadsheet reflecting inmates in this category who had SAMs imposed under 501.2, and one spreadsheet reflecting inmates in this category who had SAMs imposed under 501.3: (a) sex; (b) SAM start date; (c) SAM stop date; (d) sentence imposed/time to be served; and (e) any "Y/N" flag indicating whether the inmate has an Immigration and Customs Enforcement ("ICE") detainer. Stroble Decl. ¶ 10(B). Again, identifying information was not released, and each row of the spreadsheet corresponded to an individual inmate and was labeled with that inmate's unique identifier, described above. *Id.*

Third, BOP produced, through counsel, (a) a list of offense codes assigned in SENTRY to inmates who, since September 11, 2001, have had an STG designation of "international terrorist;" (b) for each offense code listed in (a), the number of inmates assigned the offense code in SENTRY among the population of inmates who have had an STG designation of "international terrorist" since September 11, 2001; and (c) a definition of each offense code listed under (a). Stroble Decl. ¶ 10(C).

Fourth, BOP produced, without redaction, agreed-upon pages from the SENTRY General Use Code Tables. Stroble Decl. ¶ 10(D).

Fifth, BOP personnel searched the electronic "Key Indicators" database and electronic and paper files at USP-Marion and FCI Terre Haute for records reflecting the inmate capacity of the Communications Management Units ("CMUs") at those two institutions, and BOP produced responsive records to HRW. Stroble Decl. ¶¶ 10(E), 11.

Sixth, BOP searched the Central Files of inmates currently held at the Marion and Terre Haute CMUs for records of requests for Islamic religious accommodation and/or the disposition of any such requests. Stroble Decl. ¶ 10(F). BOP also searched the SENTRY records system for administrative remedy requests/dispositions from 9-11-2001 to 5-12-2014 regarding "Religious Programs (Except Food/Diet/Meals) – Access To"; "C Religious Diet – Certified/Non-Flesh Alternatives – Access To"; and "G Religious Rituals" for inmates held at the Marion and Terre Haute CMUs. *Id.* BOP then produced responsive records to HRW. *See id.* ¶ 11.

## ARGUMENT

### A. Legal Standards for Summary Judgment in FOIA Actions

The Freedom of Information Act, 5 U.S.C. § 552, represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)); *New York Times Co. v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012). Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest," *CIA v. Sims*, 471 U.S. 159, 166-67 (1985), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions," *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *see also Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) ("Recognizing, however, that the public's right to information was not absolute and

that disclosure of certain information may harm legitimate governmental or private interests, Congress created several exemptions to FOIA disclosure requirements."); *John Doe Agency*, 493 U.S. at 152 (FOIA exemptions are "intended to have meaningful reach and application").

Most FOIA actions are resolved by summary judgment. *See, e.g.*, *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, courts consider two issues to determine whether summary judgment for the defendant agency is appropriate. First, the court must determine whether the agency has made "reasonable efforts to search for the records" requested by the plaintiff. *See* 5 U.S.C. § 552(a)(3)(C); *see also Carney*, 19 F.3d at 812. Second, if an agency's search locates records responsive to a request, the court determines whether the government has properly withheld records or information under any of FOIA's exemptions. *See* 5 U.S.C. § 552(a)(4)(B). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812. Moreover, an agency's declarations in support of its determination are "accorded a presumption of good faith." *Id.*; *see also Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009).[2] The standard for whether a withholding is proper is whether the agency's justification is "logical or plausible." *Wilner*, 592 F.3d at 73.

---

[2] The Government has not submitted a Local Rule 56.1 statement, as "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment," and a Local Rule 56.1 statement "would be meaningless." *Ferguson v. FBI*, No. 89 Civ. 5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996); *New York Times*, 872 F. Supp. 2d at 314 (noting Local Civil Rule 56.1 statement not required in FOIA actions in this Circuit).

In this case, HRW agreed that if BOP undertook certain additional searches for records, HRW would not dispute the adequacy of BOP's searches in response to the FOIA Requests. *See* ECF No. 19, ¶ 1. Because BOP undertook the searches and other actions described in the April 24 Stipulation, the adequacy of BOP's searches is not at issue. Furthermore, the Government has submitted detailed declarations explaining the bases for BOP's, CRM's, and OIP's partial and full withholdings of documents pursuant to Exemptions 3, 6, 7(C), 7(E), and 7(F). Because the Government's justifications of its withholdings are logical and plausible, the Court should grant Defendant's summary judgment motion in its entirety.

**B.  The Government Properly Applied FOIA's Exemptions**

The agency declarations establish that the Government properly withheld documents in part and in full pursuant to FOIA Exemptions 3, 6, 7(C), 7(E), and 7(F).

**1.  BOP, CRM, and OIP Properly Withheld Third Parties' Personally Identifiable Information Pursuant to Exemptions 6 and 7(C)**

BOP, CRM, and OIP properly withheld portions of released documents pursuant to Exemptions 6 and 7(C). As explained more fully below, Exemptions 6 and 7(C) balance individuals' privacy interests in protecting information from disclosure against the public interest in that particular disclosure.

Exemption 6 exempts from disclosure information from personnel, medical, or other similar files, the disclosure of which "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). The statutory language concerning files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any "information which applies to a particular individual . . .

sought from government records." *Id.* at 602; *see also Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 174 (2d Cir. 2014). The privacy interest in Exemption 6 "belongs to the individual, not the agency." *Amuso v. DOJ*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009).

FOIA Exemption 7(C) exempts from disclosure records or information compiled for law enforcement purposes, to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). As set forth in the agency declarations, the records and information withheld by the Government in this matter were compiled for law enforcement purposes, and thus satisfy the threshold requirement of Exemption 7(C).   Stroble Decl. ¶ 16; CRM Decl. ¶¶ 15-16; OIP Decl. ¶ 10; *see Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003) (claim of law enforcement purpose by agency specializing in law enforcement entitled to deference). The records originating with BOP are law enforcement records because they were all compiled in the exercise of BOP's authority under 18 U.S.C. § 3621(a). *See* Stroble Decl. ¶ 16. The records addressed in the CRM and OIP Declarations are law enforcement records because they concern procedures—specifically, the imposition, administration, and extension of SAMs—related to housing inmates in federal detention facilities. *See* CRM Decl. ¶¶ 15-16; OIP Decl. ¶ 10. Exemption 7(C) "is more protective of privacy than Exemption 6, because [Exemption 7(C)] applies to any disclosure that could reasonably be expected to constitute an invasion of privacy that is unwarranted." *Associated Press v. DOJ*, No. 06 Civ. 1758 (LAP), 2007 WL 737476 at *4 (S.D.N.Y. Mar. 7, 2007).

In determining whether personal information is exempt from disclosure under Exemptions 6 and 7(C), the Court must balance the public's need for this information against the individual's privacy interest. *See Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005). "The privacy side

of the balancing test is broad and encompasses all interests involving the individual's control of information concerning his or her person." *Id.* at 88. Moreover, "[t]he privacy interests protected by the exemptions to FOIA are broadly construed." *Associated Press v. DOJ*, 549 F.3d 62, 65 (2d Cir. 2008) (per curiam). Accordingly, even a small privacy interest triggers a balancing analysis. *See Associated Press v. DOD*, 554 F.3d 274, 285 (2d Cir. 2009) ("Thus, once a more than *de minimis* privacy interest is implicated the competing interests at stake must be balanced in order to decide whether disclosure is permitted under FOIA.").

On the other hand, the "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] *significantly* to public understanding *of the operations or activities of the government.*" *DOD v. FLRA*, 510 U.S. 487, 495 (1994) (first emphasis added); *see also Hopkins v. HUD*, 929 F.2d 81, 88 (2d Cir. 1991). "The requesting party bears the burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA." *Associated Press*, 549 F.3d at 66. This purpose is not furthered by disclosure of information that "reveals little or nothing about an agency's own conduct." *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989).

In this case, as reflected in the April 24 Stipulation, HRW does not appear to dispute that the privacy interests of inmates and other third parties outweigh the public interest in disclosure of personally identifying information contained in the records at issue, as it has agreed not to challenge the Government's redactions and withholdings pursuant to Exemptions 6 and 7(C) to the extent those redactions or withholdings consist of name; date of birth; register number; citizenship; country of birth; religion; case information limited to parties, case number, and witnesses; friends/associates; family members; and dates of visits to inmates. *See* ECF No. 19,

¶ 2.  Beyond these categories, BOP, CRM, and OIP withheld the following information pursuant to Exemptions 6 and 7(C):  In spreadsheets listing inmates held in CMUs, BOP redacted columns reflecting Security Threat Group ("STG") status, specific criminal offense conduct, known associations, CMC assignment, and staff comments associated with the inmate that generally discussed specific conduct and/or where an inmate was transferred. *See* Stroble Decl. ¶¶ 18-19 & Ex. 2. In records of requests for Islamic religious accommodations by CMU inmates and records of the dispositions of such requests, BOP redacted inmates' TRULINCs IDs, which are used for sending electronic messages within BOP; inmate job assignments; inmate cell assignments; the name of a BOP staff member; TRULINCs codes that permit BOP staff to reply directly to inmates; BOP staff user IDs and file locations (which include staff user identifiers); and the name and address of a bookstore with which an inmate appeared to have communicated. Stroble Decl. ¶¶ 20-21 & Ex. 2. In the SAMs memoranda, CRM and OIP redacted identifying information such as the specific U.S. Attorney's Offices handling the inmates' cases, details regarding the crimes committed by the inmates, sentence information, information detailing specific facts supporting the SAMs restrictions, and information specific to the inmates' incarceration. CRM Decl. ¶ 18 & n.2, Ex. 1; OIP Decl. ¶ 11 & Ex. B. Each withholding is catalogued in the agencies' *Vaughn* indexes. *See* Stroble Decl., Ex. 2; CRM Decl., Ex. 1; OIP Decl., Ex. B.

In their declarations, the BOP, CRM, and OIP declarants explain their determinations that these withholdings are warranted to protect the privacy of inmates and other third-party individuals. *See* Stroble Decl. ¶¶ 19-21; CRM Decl. ¶¶ 18-19; OIP Decl. ¶¶ 10-12. The withheld information includes not only directly personally identifiable information of third parties (such as names and identification numbers), but also information that could be used to deduce

individuals' identities in the context of other information disclosed. *See* Stroble Decl. ¶¶ 19-21; CRM Decl. 18 & n.2; OIP Decl. ¶ 10. For example, as explained in the Stroble Declaration, there are a limited number of inmates housed in the CMUs. *See* Stroble Decl. ¶¶ 19, 21. In that context, revealing inmates' cell or job assignments, STG designations, offense conduct, associations, CMC assignments, or details regarding transfers between facilities, in conjunction with non-withheld information, would serve to identify inmates. *See id.* ¶¶ 19-21. With respect to the SAMs memoranda, as explained in the CRM and OIP Declarations, information such as the crimes committed by the inmate, facts supporting the imposition of the SAMs, the inmate's status, the U.S. Attorney's Office that prosecuted the inmate, and the inmate's place of incarceration and legal visitors, in conjunction with non-withheld information and given the relatively small number of inmates subject to SAMs, could be reasonably expected to identify inmates subject to the SAMs memoranda. *See* CRM Decl. ¶ 18 & n.2; OIP Decl. ¶ 10. Accordingly, the Government properly determined that this information was personally identifying and triggered privacy concerns. *See Dep't of Air Force v. Rose*, 425 U.S. 352, 380-81 (1976) (approving of redaction of "personal references or other identifying information" in summaries of U.S. Air Force Academy honor and ethics hearings pursuant to Exemption 6).

Federal courts recognize that individuals have a significant privacy interest in their personally identifiable information. *See, e.g.*, *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (Exemption 6 applies to "files about an individual" and "bits of personal information, such as names and addresses"); *Associated Press*, 554 F.3d at 285 ("It is well established that identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA." (citing cases)); *Tereshchuk v. Bureau of Prisons*, --- F. Supp. 3d. ----, 2014 WL 4637028, at *4 (D.D.C. Sept. 16, 2014) (upholding

redaction of identifying information in inmate administrative requests and responses, noting that the information contained in such requests and responses is "highly personal"). The documents at issue in this case contain a variety of sensitive, personal information, such as requests for religious accommodations and details of inmates' incarceration, including restrictions to which particular inmates are subject. *See* Stroble Decl. ¶ 22; CRM Decl. ¶ 19; OIP Decl. ¶ 12.

On the other side of the balancing analysis, the release of the personally identifying information withheld by the agency in this case would not contribute "significantly to public understanding of the operations or activities of the government," which is the "only relevant public interest in disclosure to be weighed in this balance." *FLRA*, 510 U.S. at 495-96; *see also Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) ("Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure."). Indeed, apparently acknowledging that the balance weighs against disclosure of personally identifying information, HRW has stipulated that it will not challenge certain withholdings pursuant to Exemptions 6 and 7(C). *See* ECF No. 19, ¶ 2. Moreover, although personally identifying information was redacted from the SAMs memoranda and records regarding Islamic religious accommodation requests, the responsive substantive information in those documents was disclosed. *See* CRM Decl. ¶ 23; OIP Decl. ¶¶ 11, 13; Stroble Decl. ¶ 22. And although BOP redacted personally identifying information in the CMU spreadsheets,[3] BOP produced much of the general population

---

[3] In addition to the general privacy concerns addressed in FOIA Exemptions 6 and 7(C), maintaining the anonymity of CMU inmates listed in the spreadsheets released by BOP was necessary because, pursuant to BOP regulations, "Lists of Bureau inmates shall not be disclosed." 28 C.F.R. § 513.34(b); *see* Stroble Decl. ¶ 22; *cf. Yagman v. U.S. Dep't of Justice*, No. CV 13–0354 PA (Ex), 2014 WL 1245305, at *9 (C.D. Cal. Mar. 22, 2014) ("Providing a list of inmates would be an unreasonable invasion of the privacy of the inmates. The Court finds that disclosure of such lists and rosters would shed little to no light on the activities of BOP sufficient to overcome the substantial privacy interest of the inmates.").

information regarding the CMUs that HRW sought in its December 2012 Letter. *See* Stroble Decl., Ex. 1; Compl., Ex. R, ECF No. 1-18. Accordingly, any public interest that HRW might invoke is substantially outweighed by the privacy interests at stake. Because the balancing analysis tilts heavily in this case towards protecting personally identifying information from disclosure, BOP, CRM, and OIP properly withheld the information pursuant to Exemptions 6 and 7(C).

### 2. BOP Properly Withheld Information Relating to Law Enforcement Techniques and Procedures Pursuant to Exemption 7(E)

Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

BOP's justifications for its Exemption 7(E) withholdings in documents other than BOP000264 and BOP000265 are set forth in the public Stroble Declaration. Each application of Exemption 7(E) is catalogued in BOP's *Vaughn* index. *See* Stroble Decl., Ex. 2.[4] The law enforcement techniques and procedures include classification and monitoring schemes, such as STG designations, CMC assignments, imposition of SAMs, and assignment to a CMU. *See* Stroble Decl. ¶¶ 26-27. Although the Stroble Declaration discusses the harms that could reasonably be expected to flow from public release of this information, *see* Stroble Decl. ¶¶ 26-27, such techniques and procedures are categorically protected by the Exemption, without any

---

[4] In documents other than BOP000264 and BOP000265, all information withheld pursuant to Exemption 7(E) was also withheld pursuant to Exemptions 6 and 7(C). *See* Stroble Decl., Ex. 2. If the Court concludes that withholding of information was proper under one of these exemptions, it need not reach the other two exemptions with respect to that withholding.

need for inquiry into the harm that would result from their disclosure. *See Allard K. Lowenstein Int'l Human Rights Project v. DHS*, 626 F.3d 678, 681 (2d Cir. 2010); *see also Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997). Furthermore, as discussed above, the records at issue meet the threshold requirement of Exemption 7(E)—that they were "compiled for law enforcement purposes" within the meaning of FOIA. *See supra* Part B.1; *see also* Stroble Decl. ¶¶ 16, 25. Thus, BOP properly withheld information pursuant to Exemption 7(E).

### 3. BOP Properly Withheld Information in the "Key Indicators" Documents Pursuant to Exemptions 3, 7(E), and 7(F)

With respect to the documents Bates-stamped BOP000264 and BOP000265—Key Indicators for USP Marion (Rated Capacity), dated March/2014, and Key Indicators for FCI Terre Haute (Rated Capacity), dated March/2014—BOP's redactions pursuant to Exemptions 3, 7(E), and 7(F) are addressed in the *Ex Parte*, Under Seal Declaration of Clinton Stroble (the "*Ex Parte* Stroble Declaration*"). This declaration is being submitted *ex parte* because it contains information that is itself exempt from disclosure. *See, e.g.*, *Life Extension Foundation, Inc. v. I.R.S.*, 915 F. Supp. 2d 174, 185-86 (D.D.C. 2013) (relying on *in camera* declaration in concluding that information was exempt from disclosure under Exemptions 3 and 7(D)); *Muslim Advocates v. U.S. Dep't of Justice*, 833 F. Supp. 2d 106, 109 (D.D.C. 2012) (noting review of *ex parte* declaration with respect to withholdings under Exemption 7(E)). In the "Key Indicators" documents, all information redacted pursuant to Exemption 3 was also redacted pursuant to Exemptions 7(E) and 7(F), and *vice versa*. Hence, if the Court concludes that any one of these exemptions was properly applied, it need not reach the other two.

Exemption 3 protects from disclosure matters that are "specifically exempted from disclosure by statute (other than [5 U.S.C. § 552(b)]), if that statute--A) (i) requires that the

matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009 [enacted Oct. 28, 2009], specifically cites to [5 U.S.C. § 552(b)(3)]." 5 U.S.C. § 552(b)(3). BOP's withholdings pursuant to Exemption 3 are discussed in the *Ex Parte* Stroble Declaration.

The Exemption 7(E) standard is set forth above. Exemption 7(F) protects from disclosure records or information compiled for law enforcement purposes, to the extent that the production of such law enforcement records or information could reasonably be expected to endanger the life or physical safety of any individual. 5 U.S.C. § 552(b)(7)(F). The "Key Indicators" documents meet the Exemption 7 threshold for the reasons set forth in the public Stroble Declaration. *See* Stroble Decl. ¶ 30. BOP's redaction of information from the "Key Indicators" documents pursuant to Exemptions 7(E) and 7(F) is discussed in the *Ex Parte* Stroble Declaration.

For the reasons set forth in the *Ex Parte* Stroble Declaration, BOP properly withheld information in the "Key Indicators" documents pursuant to Exemptions 3, 7(E), and 7(F).

### 4. The Government Has Produced All Reasonably Segregable, Non-Exempt Responsive Information

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). This provision does not require disclosure of records in which the non-exempt information that remains is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information exists because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words").

BOP, CRM, and OIP reviewed the withheld material and disclosed all responsive, non-exempt information that reasonably could be segregated and disclosed. *See* Stroble Decl. ¶ 12; CRM Decl. ¶ 25; OIP Decl. ¶ 13. Accordingly, the agency has produced all "reasonably segregable portion[s]" of the responsive records. 5 U.S.C. § 552(b).

**5. HRW Is Not Entitled to the Release of Non-Responsive Information**

A federal agency "has no obligation to produce information that is not responsive to a FOIA request." *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 156 (D.D.C. 2010), *aff'd*, 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010) (internal quotation marks omitted); *see, e.g*, *Families for Freedom v. U.S. Customs & Border Protection*, 837 F. Supp. 2d 287, 298 (S.D.N.Y. 2011) (approving of redaction of 2010 arrest statistics as non-responsive because plaintiff did not request information from 2010); *Freedom Watch, Inc. v. Nat'l Sec. Agency*, --- F.Supp.2d ----, 2014 WL 2768849, at *4 (D.D.C. June 12, 2014) ("The practice of redacting non-responsive materials from documents produced in response to FOIA requests has been approved by courts in this Circuit." (citing cases)). In this case, BOP redacted non-responsive information in two broad categories of records: records reflecting inmate capacity of the CMUs, which were released pursuant to paragraphs 8 and 10(c) of the April 24 Stipulation, and records of requests for Islamic religious accommodation and the dispositions of such requests, which were released pursuant to paragraphs 9 and 10(d) of the April 24 Stipulation. *See* Stroble Decl. ¶ 31 & Ex. 3, ¶¶ 8-10. With respect to documents released pursuant to paragraphs 8 and 10(c) of the April 24 Stipulation, BOP determined that the information redacted as non-responsive did not concern the inmate capacity of a CMU. *See* Stroble Decl. ¶ 31. With respect to documents released pursuant to paragraphs 9 and 10(d) of the April 24 Stipulation, BOP determined that the information redacted as non-responsive did not reflect or concern requests for religious accommodation or

the dispositions of such requests. *See id.* The redactions of non-responsive information are detailed in BOP's *Vaughn* index. *See* Stroble Decl., Ex. 2.[5]

For all of these reasons, the Court should grant summary judgment to Defendant.

## CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment should be granted in its entirety.

Dated:     New York, New York
           February 23, 2015

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:     */s/ Elizabeth Tulis*
        ELIZABETH TULIS
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Telephone: (212) 637-2725
        Facsimile: (212) 637-2702
        elizabeth.tulis@usdoj.gov

---

[5] In addition, upon further review, it was determined that some records originally released to HRW in redacted form pursuant to paragraphs 9 and 10(d) of the April 24 Stipulation were in fact entirely non-responsive because they did not concern requests for Islamic religious accommodation or the disposition of such requests, but rather concerned other types of religious accommodations, or did not concern requests for religious accommodation at all. *See* Stroble Decl. ¶ 32. The Bates-ranges of those documents are listed in a footnote to the BOP *Vaughn* index. *See* Stroble Decl., Ex. 2, at 3.