```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X
                                                                           :
  HUMAN RIGHTS WATCH,                                                      :
                                                                           :    13-CV-7360 (JPO)
                                          Plaintiff,                       :
                                                                           :    OPINION AND ORDER
                       -v-                                                 :
                                                                           :
  DEPARTMENT OF JUSTICE FEDERAL BUREAU OF                                  :
  PRISONS,                                                                 :
                                                                           :
                                          Defendant.                       :
-------------------------------------------------------------------------- X
```

J. PAUL OETKEN, District Judge:

On September 16, 2015, this Court granted in part and denied in part each party's cross-motion for summary judgment. (Dkt. No. 67.) As part of that Order, the Court directed the Government to "transmit to the Court an unredacted version of the Comments column of the Historical CMU Spreadsheet for the Court's segregability analysis." (*Id.* at 15.) Shortly thereafter, the Government delivered the required documents for the Court's *in camera* review and filed a motion for reconsideration as to part of the Court's analysis of the Comments column. (Dkt. No. 68.) Human Rights Watch, in its response, seeks reevaluation of a different portion of the Court's opinion pertaining to the Conduct column of the "Racial/Ethnic/Citizenship Breakdown + Offense Conduct" spreadsheets. The Court has completed its *in camera* review.

For the reasons explained below, the Government's motion for reconsideration is granted. Human Rights Watch's request is denied. The Court concludes that redaction of some of the Comments column is appropriate, so the Government's motion for summary judgment is granted in part as to that column, and Human Rights Watch's motion is denied in part as to that column.

I.      **Motions for Reconsideration**

Familiarity with the prior opinion in this case is assumed. *See Human Rights Watch v. Dep't of Justice Bureau of Prisons*, No. 13-CV-7360, 2015 WL 5459713 (S.D.N.Y. Sept. 16, 2015). "A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (citation and internal quotation marks omitted). To prevail, the movant must demonstrate "(1) an intervening change in controlling law; (2) the availability of new evidence[;] or (3) the need to correct clear error or prevent manifest injustice. *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 580–81 (S.D.N.Y. 2013) (citation omitted). "Such a motion is appropriate where the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Cancel v. Kelly*, No. 13-CV-6007, 2016 WL 1559166, at *1 (S.D.N.Y. Apr. 15, 2016) (citation and internal quotation marks omitted); *see Cioce v. Cty. of Westchester*, 128 Fed. App'x 181, 185 (2d Cir. 2005) (similar).

The Government moves for reconsideration of the Court's treatment of the "Comments" column of the Historical CMU Spreadsheet. Human Rights Watch does not move for reconsideration, but in its memorandum in opposition, it suggests that the Court revisit its treatment of the "Conduct" column of the "Racial/Ethnic/Citizenship Breakdown + Offense Conduct" spreadsheets.

The Court "reserve[d] judgment" as to the "Comments" column. *Human Rights Watch*, 2015 WL 5459713, at *8. As the Court noted, "the Government is obligated to segregate exempt information and disclose all other information." *Id.* That column, the Court explained, "likely

contains some nonexempt information segregable from exempt information." *Id.* The Court understood the Government's assertion of Exemption 7(C) as hinging on the column's "references to [Security Threat Group ("STG")] assignments, and to associations and conduct related to STG assignments." *Id.* (alteration omitted). The Court ordered *in camera* review to assure itself that the STG-related information was not segregable from other comments in the "Comments" column. *Id.*

The Government moves for reconsideration on the ground that the "Comments" column contains other exempt information unrelated to STG information. (Dkt. No. 69 at 4.) The Government is correct. The Court drew its description from portions of the Government's brief and declaration emphasizing the STG references in the "Comments" column. As the Government also argued—and as the Court overlooked—the column also contains inmate-specific information about the inmate's conduct, associations, aliases, and transfers. (*See, e.g.*, Dkt. No. 31 at 11; Dkt. No. 53 ¶ 6.) The Government is correct that this information was compiled for law enforcement purposes and triggers inmate privacy interests that weigh against the incremental public interests at stake, as the Court explained in its prior opinion. *Human Rights Watch*, 2015 WL 5459713, at *5-8. Contrary to Human Rights Watch's reading of the opinion, the Court assumed that the "Comments" column could be divided into STG information and nonexempt information. Other exempt information is present in the column—as has become clear on the Court's *in camera* review of the column itself. Accordingly, the Government's motion is granted.

Human Rights Watch asks the Court to expand its *in camera* review to include the Conduct" column of the "Racial/Ethnic/Citizenship Breakdown + Offense Conduct" spreadsheets. Relying on the description in the Government's declaration, the Court described

3

that column as "conduct giving rise to the STG assignment." *Id.* at \*2 (citing Dkt. No. 35 at 8-9.)  As the Government now forthrightly concedes, its later declaration describes the column more broadly.  (Dkt. No. 69 at 3 n.2; Dkt. No. 53 ¶¶ 5-7.)  In its most recent statement, the Government explains that the "Conduct" column also contains "(1) information regarding inmates' offense conduct that would identify individuals as CMU inmates, and (2) sensitive information regarding incarceration conduct and/or sexual misconduct that could be linked to particular inmates by others already aware of those inmates' confinement in the CMU."  (Dkt. No. 70 ¶ 6.)  The Government also describes the column as containing "details regarding inmates' post-incarceration misconduct."  (Dkt. No. 72 at 5.)

Human Rights Watch is correct that the opinion's reasoning no longer justifies redaction of the "Conduct" columns.  Further *in camera* review, however, is unnecessary.  *See ACLU v. FBI*, 59 F. Supp. 3d 584, 589 (S.D.N.Y. 2014) ("*In camera* review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion." (quoting *Local 3 v. NRLB*, 845 F.2d 1177, 1180 (2d Cir. 1988)).  The information newly identified in the column "could reasonably be expected to constitute an unwarranted invasion of personal privacy" and is exempt under Exemption 7(C).  5 U.S.C. §552(b)(7)(C); *see Human Rights Watch*, 2015 WL 5459713, at \*4 (identifying the three part test for Exemption 7(C))  This information was "compiled for law enforcement purposes."  5 U.S.C. §552(b)(7)(C).  Keeping track of inmates' offense conduct, post-incarceration misconduct, conduct while incarcerated, and/or sexual misconduct is a "proactive step[] designed to prevent criminal activity and maintain security" by guiding DOJ's treatment of and future responses to inmates.  *Pub. Emps. For Env't'l Responsibility (PEER) v. United States Section, Int'l Boundary and*

*Water Comm'n*, 740 F.3d 195, 203 (D.C. Cir. 2014) (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 582 (2011) (Alito, J., concurring)).

This information also implicates more than a *de minimis* privacy interest. *Human Rights Watch*, 2015 WL 5459713, at *6-7. Detailed information regarding offense conduct has a significant risk of being identifying, *see id.* at *9 (noting similar concerns with SAM status), and the remaining information—especially sexual misconduct and post-incarceration misconduct—is information in which inmates have a pronounced interest in remaining private even if the risk of linking that information to them is small. And here, that risk is not small, given that few people have ever been in either of the two CMUs at issue. *Id.* at *7.

Finally, balancing this information with the public interest, the incremental public interests furthered by release of this information are relatively minimal. It is not clear how post-incarceration conduct is helpful to advancing understanding of how CMU restrictions work or how inmates end up in CMUs. *See id.* at *7 (describing the public interests at stake). Human Rights Watch makes little effort to explain why the remaining information would be of incremental public benefit (Dkt. No. 71 at 4-5), especially in light of the information otherwise released—including some offense conduct information, *Human Rights Watch*, 2015 WL 5459713, at *2.

Accordingly, the Government's motion for reconsideration is granted, and the Court denies Human Rights Watch's request for further *in camera* review of the Conduct columns.

## II.     *In Camera* Review

The Court has also completed *in camera* review of the "Comments" column, along with the parties' submissions, which helpfully assisted that review.

The Government identifies twenty-three categories of information within the Comments column:

A. Specific transfer/release information
B. Information regarding incarceration and/or criminal conduct
C. Case identification information
D. INS/deportation information
E. STG information
F. Alias/name/nickname information
G. [Special Administrative Measures] information
H. Medical/mental health treatment information
I. Information regarding cooperation with government or suggestive of cooperation with government
J. Details regarding an inmate's religious preference
K. Sentencing information
L. Information regarding cooperation with government or suggestive of cooperation with government
M. Details regarding time served toward sentence
N. Civil commitment information
O. Prior institution/designation information
P. Information regarding return to CMU
Q. Inmate date of death
R. Designations by law enforcement agencies
S. Parole information
T. Further conviction and/or sentence information
U. Date of approval for initial designation to CMU
V. Details regarding prosecution
W. Other background information

(Dkt. No. 70 ¶ 3.)

After *in camera* review, it is clear that many of these categories include information that is directly identifying or almost directly identifying. Some of these categories also implicate significant privacy interests. Indeed, even describing these categories of information in more detail would substantially risk identifying the inmate. Categories (B), (C), (F), and (R) fit this description.

Another set of information implicates significant privacy interests. In these cases, while the risk of identification is lower, the nature of the information outweighs the public interests at

6

stake.  For some of these categories, the information itself would also not advance the public interest as articulated by Human Rights Watch, or the information is particularly identifying because it appears so rarely in the spreadsheet—including Category (N), of particular interest to Human Rights Watch.  Categories (E), (G), (H), (I), (L), (N), (T), (U), and (W) fit this description.

      A third set of information is substantially likely to be identifying not because of the character of the information, but because the information appears only a few times in the spreadsheet.  If anyone knows that the category of information applies to a CMU inmate, knowledge of this information would be almost immediately identifying.  In most of these cases, while divulging the information might advance the public interests identified by Human Rights Watch, the incremental benefit is minute.  For example, the Government admits to Human Rights Watch that exactly one inmate died in a CMU.  Identifying that inmate's particular date of death would identify that inmate's row, but would not advance the public interest in any significant way.  *See Schrecker v. United States Dep't of Justice*, 254 F.3d 162, 166 (D.C. Cir. 2001) (noting that the death of the subject diminishes but does not extinguish privacy interests in the information).  Categories, (K), (M), (Q), (S), and (V) fit this description.

      Fourth, there is a set of information as to which the risk of identification is great, but the public interest is also significant.  This information largely pertains to the movement of inmates—the kinds of facilities in which they were housed before they arrived at CMUs, and the kinds of facilities to which they went after leaving CMUs.  For this information, the Court concludes that the generalized portions of these comments is reasonably segregable and not exempt.  For example, the Government could release the portion of the comment indicating that a CMU inmate was released to the general population, but it need not identify a specific date or

facility.  The Government need not release any information otherwise exempt under one of the categories described above, including Category (I).  Categories (A), (D), (O), and (P) fit this description.

Finally, the public interest outweighs the privacy interests at stake for one set of information—category (J), "details regarding religious preference."  That information is directly relevant to Human Rights Watch's asserted public interests.  Inmates' privacy interests are also relatively minimal.  The "details" redacted help explain certain entries in the religious preference column, but do not add any detailed information about the inmates' specific beliefs.  This information is not exempt except insofar as it identifies specific dates.

The Court concludes that certain information is not subject to Exemption 7(C).  A fortiori, it is not subject to Exemption 6 even if it satisfied the Exemption 6 threshold.  *Human Rights Watch*, 2015 WL 5459713, at * 4, 12.  The Government's Exemption 7(E) argument relates only to the STG information, and the STG information is already exempt.  (Dkt. No. 69 at 3.)  And the Government has not asserted any other Exemption pertaining to this information.  Accordingly, this information must be released.

### III. Conclusion

For the foregoing reasons, the Government's motion for reconsideration is GRANTED. The Government is ordered to release a version of the Historical CMU Spreadsheet including a redacted "Comments" column, including the items identified as Categories (A), (D), (J), (O), and (P) as described above and where otherwise not exempt.   The Clerk of Court is directed to terminate the motion at docket number 68 and close the case.

SO ORDERED.

Dated: June 23, 2016
New York, New York

_____
J. PAUL OETKEN
United States District Judge